# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERRY MARTIN d/b/a SHERRY MARTIN PHOTOGRAPHY,<br><br>   Plaintiff,<br><br>vs.<br><br>WALT DISNEY INTERNET GROUP, ESPN, INC., JON FISH, COMPETITOR GROUP, INC., BOB BABBITT and OSAMU CHIBA d/b/a OPIX PHOTOGRAPHY,<br><br>   Defendants. | CASE NO. 09CV1601-MMA (POR)<br><br>**ORDER DENYING IN PART AND FINDING AS MOOT IN PART PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>[Doc. No. 8] |

On July 23, 2009, Plaintiff Sherry Martin, a freelance photographer, filed the instant action alleging copyright infringement against Walt Disney Internet Group, ESPN, Jon Fish, Competitor Group, Inc., Bob Babbitt, and Osamu Chiba d/b/a Opix Photography. (Doc. No. 1.) Now pending before the Court is Plaintiff's Motion for Preliminary Injunction. (Doc. No. 8.) On Monday, December 7, 2009, the Court held a hearing on the motion. Attorneys Stephen Kennedy and Linda Klinger appeared on behalf of Plaintiff. Attorneys Stephen Korniczky and Ryan Hawkins appeared on behalf of Defendants Walt Disney Internet Group, ESPN, Inc., and Jon Fish (the "ESPN Defendants"). Attorney Darl Danford appeared on behalf of Defendants the Competitor Group, Inc. and Bob Babbitt (the "Competitor Defendants"). Upon consideration of the submissions and oral argument, and for the

foregoing reasons, the Court hereby **DENIES IN PART** and **FINDS AS MOOT IN PART** Plaintiff's motion for a preliminary injunction and impoundment of infringing articles.

## BACKGROUND[1]

Plaintiff Sherry Martin is a freelance sports photographer. Martin was retained on a contract basis to take photos for Opix Photography, which is owned and operated by Defendant Osamu Chiba. Opix Photography serves as the official photographer for local marathons, triathlons, and other various sporting events. Opix then sells photos of the competitors as prints or as images on mugs, magnets, or other various souvenir items. After retaining Martin's services, Martin and Chiba agreed that Opix would only sell copies of the printed photographs and would send anyone interested in purchasing the digital images to Martin, so Martin could deal with those individuals directly. Chiba and Martin had this arrangement for approximately two years.

On July 29, 2007, Martin covered the Solana Beach Triathlon, during which she took images of Dr. David Martin.[2] On April 25, 2008, Dr. Martin was killed in a shark attack while training for a triathlon. The next day, Martin, who was out of the country, received an email from Chiba, which stated in the subject line "NBC used one of photos you took at Mission Bay Tri last year" and included a link to a slideshow and a screenshot of Martin's photo. After receiving the email, Martin learned that Chiba had negotiated a license of certain digital images of Dr. Martin to NBC. Martin states that she told Chiba that he did not have the authority to sell or license her digitized images or negotiate price on her behalf. On May 6, 2008, Martin received a check from Chiba for the work he licensed to NBC.

In April 2008, Defendant Bob Babbitt, editor-in-chief of Competitor Magazine, approached Chiba about the pictures of Dr. Martin. Chiba sent Babbitt a link to low-resolution digital images of Dr. Martin that were posted on Opix's website. Babbitt sent an email to Chiba requesting certain high resolution images of the linked images. On May 13, 2008, Chiba forwarded the email chain to Martin, stating that Babbitt was interested in two of her pictures and that the deal would

---

[1] The following facts are taken from Plaintiff's complaint and the factual background of the briefs submitted in connection with the instant motion. The facts contained herein are not in dispute.

[2] Dr. Martin and Plaintiff are not related.

1  be $50 per photo if published. Chiba told Martin that if the photos were published, she could send
2  an invoice directly to Competitor. Martin stated that she would not agree to certain terms and
3  asked if she should speak with Babbitt directly. Chiba told her yes.

4  On May 15, 2008, Martin emailed Babbitt directly, informing him that she was the
5  photographer of the photos Babbitt wanted. Martin stated that she did not sell full resolution
6  images for publication "without a contract and invoice." Martin agreed to the price of $50 because
7  it had "apparently been sent by Osamu [Chiba]." Martin also asked Babbitt to confirm the digital
8  image specifications he required and asked how many images he would be using. On May 16,
9  2008, Martin sent Babbitt another email reiterating that "she did not send out high resolution
10 images without a contract" and that "any contract would include specific terms." Babbitt did not
11 respond to either email. Martin later learned that Chiba had given Babbitt the high resolution
12 images without consulting her and received payment for the images. The photos were published in
13 the June 2008 issue of Competitor Magazine.

14 On August 5, 2008, Babbitt sent Chiba an email informing him that Jon Fish at ESPN was
15 interested in the pictures. Babbitt asked Chiba, "[d]o you mind sending Jon some of the images
16 you have of David? Thanks so much!" Chiba responded by sending hyperlinks to the low
17 resolution watermarked images found on the Opix website. Chiba stated that "[a]gain, Sherry will
18 handle her pics" and "it's all up to her." Chiba copied Martin on this email. Babbitt responded,
19 telling Chiba to "touch base with Jon and let him know you have those images and see what they'll
20 [ESPN] pay . . . I'll leave that in your capable hands." The next day, Martin sent Chiba an email,
21 asking "Do I need to send my images of David over to Jon Fish? I don't have that contact info."
22 Chiba responded saying he knew nothing about Jon Fish and stated that he did not think Martin
23 needed to contact Fish if Babbitt had already done so. Martin waited for two days for contact from
24 ESPN. When she didn't hear from ESPN, Martin sent an email to Babbitt saying, "Thanks for
25 keeping me in the loop...." Babbitt responded, "You are very welcome Sherry!" Martin heard no
26 more about ESPN until October 15, 2008, when she received an email with a link to a story on
27 ESPN.com from a friend. The image appeared twice in the article and once in a video. ESPN
28 incorrectly identified the photo credit "Opix/Sherry Martina." On October 18, 2008, Martin

emailed Chiba with the link and stated that her photo being used without her permission. Chiba responded, "Yeah, I saw the link last week or something and noticed the photo you took. And I quickly remembered this Email. I though about asking you, but I thought you dealt with Bob and/or Jon Fish of ESPN (Jon.Fish@espn.com) so I didn't think too much.... I haven't heard anything about this since 8/5/08." Martin sent ESPN a cease and desist letter, to which ESPN responded with an offer to compromise and an explanation that it had received the images from Bob Babbitt at Competitor Magazine. On February 11, 2009, Martin received a backordered edition of the June 2008 Competitor, where she saw that one of her images had been used. On February 23, 2009, Plaintiff sent a cease and desist letter to Competitor. On July 15, 2009, Plaintiff also sent a cease and desist letter to Osamu Chiba and Opix Photography.

On July 23, 2009, Plaintiff filed the instant action. On September 18, 2009, Plaintiff filed a first amended complaint. On September 25, 2009, Plaintiff filed the instant motion for preliminary injunction and impoundment of infringing articles. On December 7, 2009, the Court issued a preliminary injunction against Defendant Chiba after Plaintiff and Defendant Chiba issued a joint motion pursuant to their stipulated agreement. (Doc. No. 65.)

At the hearing on Plaintiff's motion, Plaintiff informed the Court that Plaintiff had reached a settlement with the ESPN Defendants on the instant motion. Thus, the Court did not entertain argument on the motion as to the ESPN Defendants. Accordingly, based on the representations of counsel, the Court hereby **FINDS AS MOOT** the motion for a preliminary injunction and impoundment of infringing articles to the extent it pertains to the ESPN Defendants.

### I.

### MOTION FOR PRELIMINARY INJUNCTION

#### *A.     Legal Standard*

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). Section 502(a) of the Copyright Act authorizes a court to grant injunctive relief "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). A plaintiff seeking a preliminary

injunction must establish (1) that she is likely to succeed on the merits, (2) that she is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in her favor, and (4) that an injunction is in the public interest. *Winter v. NRDC, Inc.*, 129 S.Ct. 365, 374 (2008). "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir. 2007) (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001)).

### ***B.    Analysis***

#### 1.    Likelihood of success on the merits

In order to establish a likelihood of success on the merits, Plaintiff must establish a prima facie case of direct infringement. To establish a prima facie case of direct infringement, Plaintiff must demonstrate: (1) "ownership of the allegedly infringed material," and (2) "the alleged infringers violate[d] at least one exclusive right to copyright holders under 17 U.S.C. § 106." *Perfect 10*, *supra*, 508 F.3d at 1159 (quoting *Napster*, 239 F.3d at 1013).

##### *a.    "Ownership of the Allegedly Infringed Material"*

The Competitor Defendants argue that Plaintiff has not established ownership of the allegedly infringed material. Plaintiff takes the position that she clearly owns the copyright to the photo based on the copyright registration that she filed, and which became effective on December 3, 2008. The copyright registration, however, occurred long before the effective date of the registration. Despite the subsequent registration, the Competitor Defendants contend that the true owner of the copyright is KOZ Enterprises, the organizer of the 2007 Solana Beach Triathlon. According to Babbitt's Declaration, all event participants assigned the rights to their photographic images taken during that event to KOZ Enterprises. KOZ Enterprises then contracted with Opix Photography to be the official race photographer, whereby in exchange for a fee paid by Opix to KOZ Enterprises, Opix would be allowed the rights to access the race to take photos, as well as the exclusive right to sell photos of the participants to the participants, their friends, and/or their families as souvenirs. Defendants contend that because Martin was working for Opix at the time, she is subject to this limited use. The Defendants contend that their use of the photo fell outside

this limited scope of use.

This argument, while it may be persuasive, is unsupported by any evidence other than Babbitt's declaration, which, besides being self-serving, is comprised of hearsay and lacks foundation. Babbitt was not a party to the agreement between KOZ and Opix, and he has not provided any evidence of this license agreement or any other evidence that KOZ limited Opix's use of photos to sales of them as souvenirs. Thus, this argument is without merit.

Defendants next contend that Chiba owned the copyright to Martin's images. The original agreement and Chiba's subsequent conduct in terms of handling all digital copies of Martin's images clearly demonstrate that she owned the copyrights to her images, and by extension, all rights to distribute the digital copies. Although Plaintiff subsequently ratified Chiba's actions in negotiating the license with NBC, Plaintiff states in her declaration:

> Upon learning that Chiba had negotiated a license for my digitized original artwork, I communicated to him that I did not approve of the liberties he took including the transfer of my digitized image to NBC and that I did not agree to the fee structure that he negotiated. I reinforced with him that he did not have the authority to sell or license my digitized images or negotiate price on my behalf."

(*Martin Decl.* at ¶ 12.) Martin's declaration is supported by Defendant Chiba, who states that Martin was "unhappy" about the arrangement with NBC. Chiba states that after Martin expressed her dissatisfaction, he agreed not to negotiate for Martin's images again without her permission. (*Chiba Decl.* [Doc. No. 58] at ¶ 7.)[3] In addition, Martin clearly conveyed to Bob Babbitt in two emails that she owned the images and would not sell the high resolution images without a contract. Defendant Chiba also admits that Martin owned the copyright to the image. (*Id.* at ¶¶ 6-7.) The evidence provided by Plaintiff is enough to establish that she owns the copyright to the protected work at issue here.

### b.   *Infringement*

Plaintiff asserts that Defendants infringed two of the exclusive rights granted to her under the Copyright Act: her display rights and distribution rights. Section 106 of the Copyright Act

---

[3] The Court notes that Chiba's declaration was submitted on December 3, 2009, and was thus untimely. Defendants, however, filed no objection to the late submission and were given the opportunity to address the contents of Chiba's declaration at the hearing. Thus, the Court finds it appropriate to consider the submission.

states that a copyright owner has the exclusive right "to display the copyrighted work publicly" and "to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 106. The Competitor Defendants argue that they did not infringe Martin's copyright because even if she did own the copyright, Plaintiff agreed to, confirmed, consented to, and ratified the use of the photo by Competitor. All of these arguments are without merit. It is clear from the emails that Babbitt was put on notice that Martin owned the copyright to the images. He was told as much from Chiba and Martin. Martin sent Babbitt two emails indicating that she owned the images and would not send the high resolution files without a contract in place. Yet, Babbitt used the images without any communication with Martin. Babbitt then later distributed the images to Jon Fish at ESPN without Martin's permission. Based on the foregoing, Plaintiff has adequately established infringement, and it appears that there may be a likelihood of success on the merits.

### 2. Irreparable Harm

Plaintiff appears to rely on a presumption of irreparable harm, and does not offer much analysis on the issue of whether she will suffer irreparable injury if a preliminary injunction does not issue. In cases alleging copyright infringement, the Ninth Circuit has traditionally presumed irreparable harm where a copyright holder has shown a likelihood of success on the merits. *Johnson Controls, Inc. v. Phoenix Control Systems, Inc.*, 886 F.2d 1173 (9th Cir. 1989). A recent opinion by the Supreme Court has called this practice into question. In *eBay v. MercExchange, LLC*, 547 U.S. 388 (2006), the Supreme Court rejected a presumption of irreparable harm even where a likelihood of success is shown in a case dealing with a permanent injunction in the context of a patent dispute. In analyzing whether courts may presume irreparable harm in the context of a patent permanent injunction motion, the Supreme Court analogized the issue to injunctions in copyright cases:

> [l]ike the Patent Act, the Copyright Act provides that courts 'may' grant injunctive relief 'on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.' 17 U.S.C. § 502(a). And as in our decision today, this Court has consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed.

*eBay*, *supra*, 547 U.S. at 392–93. The Court then held "that the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion

1  must be exercised consistent with traditional principles of equity, in patent disputes no less than in
2  other cases governed by such standards." *Id.* at 394.

3        Although Plaintiff failed to submit a reply brief addressing whether it is prudent to presume
4  irreparable harm in the wake of *eBay*, Plaintiff argued extensively at the hearing that the Court
5  should continue to apply the presumption in the absence of a Ninth Circuit opinion on the issue.
6  Plaintiff contends that because the Ninth Circuit has not spoken on the issue and *eBay* dealt with a
7  permanent injunction in a patent case, the Court should continue to apply the presumption.

8        The Court notes that there are inconsistent approaches among the district courts within the
9  Ninth Circuit. Some courts have adopted a strict construction of the case, and are still applying the
10 presumption of irreparable harm in copyright cases involving preliminary injunctions. *See, e.g.*,
11 *TM Computer Consulting, Inc. v. Apothacare, LLC*, 2008 U.S. Dist. LEXIS 69284, at *24 n.6 (D.
12 Or. Sept. 11, 2008). Others have adopted a broad construction of *eBay* and declined to apply the
13 presumption on motions for preliminary injunctions, as well as cases outside the context of patent
14 law, and in cases dealing with copyright law. *See Momento, Inc. v. Seccion Amarilla USA*, 2009
15 U.S. Dist. LEXIS 62664, at *7–*8 (N.D. Cal. July 6, 2009) (declining to apply presumption in
16 preliminary injunction in a copyright case); *MGM Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d
17 1197, 1214–16 (C.D. Cal. 2007) (noting that the presumption may need to be reevaluated on
18 preliminary injunctions in copyright infringement cases in light of *eBay*); *Hansen Bev. Co. v.*
19 *Innovation Ventures, LLC*, 2008 U.S. Dist. LEXIS 76243 (S.D. Cal. Sept. 29, 2008) (noting that
20 *eBay* stands for proposition that courts should not apply blanket presumptions when evaluating the
21 propriety of equitable relief). While there are persuasive arguments on both sides of the issue, the
22 Court finds that the presumption is no longer appropriate in light of *eBay*. In addition to the fact
23 that Plaintiff has not provided a compelling reason to continue applying the presumption in
24 preliminary injunctions in copyright cases, the Court finds that *eBay* compels such a result. In
25 *eBay*, the Supreme Court explained the reasons why it is important for courts to exercise their
26 equitable discretion consistent with the traditional principles of equity. The Court agrees that it
27 cannot properly exercise its discretion without considering all of these equitable considerations.
28       The Court also finds this result to be the correct one in light of another recent Supreme

1  Court decision, *Winter v. NRDC, Inc.*, 129 S. Ct. 365, 375 (2008). Prior to last year, the Ninth
2  Circuit held that a preliminary injunction may be entered in other cases based on only a
3  "possibility" of irreparable harm where the plaintiff establishes a likelihood of success on the
4  merits. *See Faith Center Church Evangelistic Ministries v. Glover*, 480 F.3d 891, 906 (9th Cir.
5  2007). In *Winter*, the Supreme Court reiterated that in order to be entitled to a preliminary
6  injunction, the standard requires "[P]laintiffs seeking preliminary relief to demonstrate that
7  irreparable injury is *likely* in the absence of an injunction." *Winter*, *supra*, 129 S. Ct. at 375 (2008).
8  As the Court stated, "An injunction is a matter of equitable discretion; it does not follow from
9  success on the merits as a matter of course." *Id.* at 381. In reiterating the standard, the Supreme
10 Court stated that "the Ninth Circuit's 'possibility' standard is too lenient." *Id.* at 375. The Court
11 stated that, "Issuing a preliminary injunction based only on a possibility of irreparable harm is
12 inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only
13 be awarded upon a clear showing that the plaintiff is entitled to such relief." *Is.* at 375–76. It is
14 clear that the Supreme Court is moving away from replacing these traditional equitable
15 considerations.

16      Here, Plaintiff has provided little, if any, evidence of irreparable injury that she will suffer
17 if the Court does not issue the preliminary injunction. Plaintiff states that she is a "solo
18 photographer who licenses out her works to publishers" and then asserts that there is irreparable
19 harm because despite her demands to cease and desist, Defendants have demonstrated that they
20 will not respect Plaintiff's copyright rights. Plaintiff, however, has failed to cite any use by the
21 Competitor Defendants after Competitor published the image in its June 2008 issue, which was 18
22 months ago. There are no facts that the Competitor Defendants continued to use the image after
23 Plaintiff sent them the cease-and-desist letter. Moreover, Plaintiff does not assert any quantitative
24 or qualitative injuries that would result if a preliminary injunction did not issue. These few facts
25 simply do not demonstrate irreparable injury.

26      Moreover, there are a number of facts that weigh against a finding of irreparable harm.
27 First, Plaintiff delayed for a substantial amount of time in attempting to obtain a preliminary
28 injunction. All of these events happened in the Summer of 2008, and Plaintiff has not alleged that

Defendants have infringed her copyright since January 2009. This action was filed on July 23, 2009, more than six months after Plaintiff admits she learned of the Competitor publication. Plaintiff did not file this motion for preliminary injunction until September 25, 2009, and asked that it not be heard until December 2009. Thus, Plaintiff has substantially delayed seeking the requested relief. "A long delay in seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Miller for and On Behalf of N.L.R.B. v. California Pac. Med. Ctr.*, 991 F.2d 536 (9th Cir. 2001); *see also Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985). In addition, the image was used immediately after the death of Dr. Martin, and has not been used since. There is no evidence that the Competitor Defendants are actively engaged in infringement. Finally, the Court notes that Plaintiff has not demonstrated any reason why her injuries could not be redressed by monetary damages. The Court notes that Plaintiff was clearly willing to settle the lawsuit for money based on the cease-and-desist letter she sent to the Competitor Defendants. Accordingly, the Court finds that Plaintiff has failed to demonstrate that irreparable injury is likely in the absence of a preliminary injunction.[4]

        *c.*    *Balance of Hardships*

In light of the foregoing, the Court finds the balance of hardships equal. Although Plaintiff has demonstrated that she may succeed on the merits, she has failed to show any irreparable injury that would occur in the event that the Court does not grant her motion for preliminary injunction. If Plaintiff is successful at trial, she will have an adequate remedy in the form of monetary damages. On the other hand, if the Court granted the preliminary injunction, it is likely that the Competitor Defendants would incur substantial expense in ensuring compliance with the terms of a preliminary injunction. On balance, the balance of hardships does not tip in favor of either party, and thus weighs against awarding a preliminary injunction.

        *d.*    *Public Interest*

Here, the public interest could easily be served through other remedies. Although it appears

---

[4] The Court notes that even were the Court to apply a presumption of irreparable harm, the presumption can be rebutted. It is the opinion of the Court that these facts, in the absence of any demonstrated irreparable injury, would be sufficient to rebut any presumption applied and compel a determination that irreparable injury is unlikely.

1  at this time that Plaintiff may be able to establish a claim for copyright infringement, the infringement
2  is no longer occurring. Forcing the Competitor Defendants to comply with a preliminary injunction
3  would seem excessive and unnecessary at this point. Moreover, the Court finds that the public's
4  interest in ensuring that rights under the Copyright Act are respected will be adequately served
5  through an award of monetary damages if Plaintiff is successful at trial.

## II.

## MOTION FOR IMPOUNDMENT

9  Plaintiff seeks "impoundment of the infringing art work only – a limited impoundment order
10 reaching exclusively to all print media containing the Protected Work, such as magazines, and all
11 media storage devices used by Defendants to copy and store the Protected Work, such as magazines,
12 and all media storage devices used by Defendants to copy and store the Protected Work, such as
13 laptops, computer servers, CD-ROMS, DVDs, flash memory cards, hard disks, system backup tapes,
14 etc." pursuant to 17 U.S.C. § 503. In the alternative, Plaintiff states that she would be satisfied if
15 "Defendant[s] [were] given the option to pay all expenses in permanently moving the Protected Work
16 from each device and transferring the Protected Work to a DVD, with a corresponding record of where
17 each copy of the Protected Work resided."

18 Section 503 of the Copyright Act permits the Court to order the impounding of all infringing
19 articles, at any time, "on such terms as it may deem reasonable." Such an order of impoundment is
20 executed by the U.S. Marshal's office. "Impoundment is . . . meant to allow for a possible remedy of
21 destruction of the infringing articles." *Religious Tech. Ctr. v. Netcom On-Line Commun. Servs.*, 923
22 F. Supp. 1231, 1263 (N.D. Cal. 1995); 4 *Nimmer on Copyright* § 14.07. An act of impoundment is
23 discretionary with the court. *Religious Tech. Ctr.*, *supra*, 923 F. Supp. at 1261.

24 On balance, the Court finds Plaintiff's request unreasonable. Plaintiff alleges that the last time
25 the Competitor Defendants used the protected work was June 2008. All of the Defendants assert that
26 they have no intent to use the protected work ever again, and there does not appear to be any purpose
27 or intent to do otherwise. Without any threat of further use of the image, ordering impoundment is
28 unreasonable. Accordingly, the Court, in its discretion, hereby **DENIES** the request.

**Conclusion**

For the reasons stated herein, the Court hereby **DENIES IN PART** and **FINDS AS MOOT IN PART** Plaintiff's motion for preliminary injunction and impoundment of infringing articles. (Doc. No. 8.)

**IT IS SO ORDERED**.

DATED: December 14, 2009

*/s/ Michael M. Anello*
Hon. Michael M. Anello
United States District Judge